IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL DAVID CARROLL, | § | |
| Movant, | § § § | |
| V. | § | No. 3:15-cv-3521-N-BN |
| UNITED STATES OF AMERICA, | § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Movant Michael David Carroll, a federal prisoner, has filed, through counsel, a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, asserting that he entered a guilty plea involuntarily based on incorrect advice from his trial counsel and that trial counsel also was constitutionally ineffective for failing to assert certain objections at sentencing (the "IATC claims"). *See* Dkt. Nos. 1 & 4. This action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The government has filed a response in opposition, *see* Dkt. No. 7, and Carroll has filed a reply brief, *see* Dkt. No. 8.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation that the Court should deny the Section 2255 motion.

**Applicable Background**

Carroll pleaded guilty to a single-count felony information alleging that he

-1-

committed wire fraud, in violation of 18 U.S.C. § 1343, and he was sentenced to 70 months of imprisonment. *See United States v. Carroll*, No. 3:13-cr-76-N (N.D. Tex.), Dkt. Nos. 1, 4, 5, 6, 9, 11, 15, 34, 42, & 44. He appealed, but the United States Court of Appeals for the Fifth Circuit dismissed his appeal on the government's motion, *see id.*, Dkt. Nos. 36 & 49; *United States v. Carroll*, No. 14-10356 (5th Cir.).

Carroll's Section 2255 motion is timely under 28 U.S.C. § 2255(f)(1).

**Legal Standards and Analysis**

The Court reviews IATC claims under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a movant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see id.* at 687-88. To be cognizable under *Strickland*, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The movant also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

As Carroll pleaded guilty, to establish prejudice, he "must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This assessment

> will depend in part on a prediction of what the outcome of a trial might have been. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.

*United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) (quoting *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (in turn citing *Hill*, 474 U.S. at 56-58)); *see also del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007) (a movant "need not prove by a preponderance that the result of the proceedings in the trial court would have been different, but he must sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair" (citing *Armstead*, 37 F.3d at 207)).

Carroll first claims that his trial counsel was unconstitutionally ineffective because counsel did not properly advise him that the Court would consider relevant conduct in determining his sentence, causing Carroll to enter his guilty plea involuntarily. But, while Carroll requests that his conviction be vacated, *see* Dkt. No. 1 at 12, he has not shown that there is a reasonable probability that, absent the allegedly ineffective advice from his counsel as to the impact of relevant conduct on his

sentence, he "would have insisted on going to trial" instead of pleading guilty, *Hill*, 474 U.S. at 59.

This failure to prove *Strickland* prejudice under *Hill* is reflected in the relief Carroll seeks – that "he be resentenced per the sentencing guidelines based on the arguments contained in the brief supporting the § 2255 motion." Dkt. No. 8 at 10; *see* Dkt. No. 4 at 31; *see, e.g., Brooks v. United States*, Nos. 2:10-CR-21-FL-1 & 2:13-CV-40-FL, 2015 WL 9237123, at *6 (E.D.N.C. Dec. 17, 2015) (where "the only relief sought was resentencing," movant failed to establish "'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'" (quoting *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012))); *Holman v. United States*, Nos. 1:12CR72-1 & 1:14CV549, 2016 WL 6304727, at *10 (M.D.N.C. Oct. 27, 2016) (The "Section 2255 Motion conspicuously omits any request that the Court strike his guilty plea and allow him to proceed to trial; instead, it asks only 'that the Court find the ACCA inapplicable, vacate his sentence, and resentence under the appropriate guideline range with a statutory ceiling of ten (10) years.' The Court thus should deny this Ground One sub-claim pursuant to *Hill* as well." (citation omitted)).

Carroll's claim that his counsel failed to advise him as to the impact of uncharged relevant conduct on sentencing, *see, e.g.,* Dkt. No. 4-1 at 3, ¶ 34 ("Again, my complaint is that before pleading guilty and receiving the PSR, Mr. Schulte did not explain to me what 'relevant conduct' meant."), also contradicts his sworn testimony during the plea colloquy, *see, e.g.,* No. 3:13-cr-76-N, Dkt. No. 42 at 5-7 (confirming he

understood that, "[i]n federal court, it is the judge who decides the sentence," which "means that the judge has to consider how the[ sentencing] guidelines might apply in [his] case, but he is not required to follow them"; that even though he acknowledged his review of the guidelines with trial counsel, he understood that he "should not depend or rely upon any statement or assurance by anyone as to what sentence [he will] get, because only the judge can make that decision"; that the judge's decision as to sentencing will not be made "until after a presentence report has been prepared by the Probation Office," which office "will interview [him] as well as the agents of the Government about the facts of the case" and "may also consider a document filed in this case called a factual resume," which contains "facts that are stipulated between [him] and the Government," but that "the probation officer is not bound by this document" and "can consider facts that are not listed in the factual resume and disregard facts that are"; that, "[i]f that happens, [he] may not be permitted to withdraw [his] plea of guilty" but will "have an opportunity through [his] attorney to object to the presentence report"; and that, "[i]n order to decide [his] sentence, the judge will consider the report, [his] objections, and any evidence presented at the sentencing hearing").

This testimony carries "a strong presumption of verity" in this proceeding. *Blackledge v. Allison*, 431 U.S. 63, 73 (1977); *see United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002) ("Reviewing courts give great weight to the defendant's statements at the plea colloquy." (collecting cases)); *United States v. Martinez*, 599 F. App'x 151, 152-53 (5th Cir. 2015) (per curiam) ("Martinez's statements under oath at

rearraignment that he was pleading guilty freely and voluntarily 'carry a strong presumption of verity.'" (citation omitted)); *see also United States v. Gonzalez*, 139 F.3d 899, 1998 WL 127868, at *2 (5th Cir. Mar. 12, 1998) (per curiam) ("As a general rule, 'a defendant will not be heard to refute his testimony given under oath when pleading guilty.'" (quoting *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985))).

While "the barrier imposed by declarations made during the plea colloquy is imposing, it is not insurmountable," as "a defendant who offers specific factual allegations supported by sworn documentation may be entitled to further development of his allegations." *United States v. White*, 111 F. App'x 274, 276 (5th Cir. 2004) (per curiam) (citing *Blackledge*, 431 U.S. at 74; *Fuller*, 769 F.2d at 1099). And, "[i]n cases where a petitioner claims that he or she was denied the effective assistance of counsel at the pleading stage, these allegations must be corroborated 'by the affidavit of a reliable third person.'" *Gonzalez*, 1998 WL 127868, at *2 (quoting *Fuller*, 769 F.2d at 1099; citing *United States v. Sanderson*, 595 F.2d 1021, 1022 (5th Cir. 1979))

Therefore, while Carroll's allegations concerning his ignorance as to the impact of relevant conduct prior to receipt of the presentence report are made in a declaration under 28 U.S.C. § 1746, *see* Dkt. No. 4-1, these allegations – refuting the solemn declarations made in open court – are uncorroborated and should not be credited over his previous sworn testimony, *cf. White*, 111 F. App'x at 276 ("Having considered each of White's unsworn allegations, we give White's solemn declarations in open court more weight than her belated, self-serving assertions on appeal." (citing *Cothran*, 302 F.3d

at 284)); *see also United States v. Maurer*, Crim. A. No. 08-112-JJB-CN, 2012 WL 1119787, at *6 & n.12 (M.D. La. Jan. 26, 2012) (accepting as true an "assertion that [petitoner's] counsel was ineffective because he failed to explain to petitioner the impact that 'relevant conduct' could have upon his guidelines sentencing range and his ultimate sentence" but finding no prejudice where petitioner, through his plea agreement and plea colloquy, was informed of the maximum sentence, the applicability of the guidelines, and that the guidelines would be "consulted" in determining the "ultimate sentence" (collecting cases finding no prejudice with similar facts)), *rec. adopted*, 2012 WL 1119783 (M.D. La. Apr. 3, 2012).

Carroll next asserts that his trial counsel was constitutionally ineffective based on the failure to object to the loss amount calculated in the presentence report and failure to object to other specific-offense sentencing enhancements.

To begin, the length of Carroll's sentence was driven by a loss amount ($2,446,002.89) that was more than $1 million but less than $2.5 million, which resulted in a 16-level enhancement, and by three separate 2-level enhancements based on (1) the number of victims (more than 10 but less than 50); (2) the use of sophisticated means; and (3) the unlawful use of identification. Carroll did, however, receive a 3-level reduction for acceptance of responsibility.

Trial counsel raised objections to all specific-offense enhancements. *See, e.g.*, No. 3:13-cr-76-N, Dkt. Nos. 17, & 30. And, after the filing of objections but prior to sentencing, Carroll and his counsel conferred through emails regarding the loss amount, the evidence to support that amount, and the lack of evidence to rebut the

government's loss-amount assertions, *see* Dkt. No. 4-1 at 18-28, with counsel requesting Carroll to "please provide me written or other substantial evidence to the contrary," *id.* at 18, and recommending that Carroll should not object to a loss amount between $1 million and $2.5 million because doing so could jeopardize Carroll's 3-level reduction for acceptance of responsibility, *see id.* at 19-20.

Before sentencing, Carroll and the government reached an agreement as the loss amount except for the losses attributed to Carroll's partner, Richard Benavides, *see* No. 3:13-cr-76-N, Dkt. No. 30, and, at sentencing, the Court agreed that there was not sufficient evidence to pin Benavides's losses on Carroll but overruled Carroll's remaining objections, *see* No. 3:13-cr-76-N, Dkt. No. 44 at 56.

Carroll now asserts that trial counsel's sentencing strategy amounted to constitutionally ineffective assistance, primarily focusing on counsel's not presenting evidence as to credits against the loss amount, which credits Carroll contends would have reduced that amount to less than $1 million and, relatedly, would have lowered the number of victims to less than 10, and therefore would have lowered his guideline range. *See, e.g.,* Dkt. No. 4 at 14-27; Dkt. No. 8.

In this regard, if "there is a reasonable probability that if counsel had" raised these objections, Carroll "would have received a guideline sentence ... less than the sentence imposed," the failure to raise these objections "resulted in prejudice." *United States v. Smith*, 454 F. App'x 260, 262 (5th Cir. 2011) (per curiam) (citing *Glover v. United States*, 531 U.S. 198, 204 (2001); *Strickland*, 466 U.S. at 694).

But Carroll has not shown such a reasonable probability.

As applicable commentary to the sentencing guidelines provides, the loss amount "shall be reduced by ... [t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense is detected." U.S.S.G § 2B1.1 cmt. n.3(E)(i) (2012). Critically,

> [t]he time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

*Id.*

The government argues that the amount of loss credits Carroll now claims to be applicable – that is, an amount that would lower the loss amount below $1 million – are for value and services Carroll provided after a victim, Michael Hinshaw, first discovered the fraud offense. *See* Dkt. No. 7 at 17-18 ("Hinshaw filed suit against Carroll on September 9, 2009, in state district court for making fraudulent representations and sought rescission of the franchise agreement and the return of approximately $122,000." (citing *In re Carroll*, 464 B.R. 293, 328 (Bankr. N.D. Tex. 2011))). Carroll argues that Hinshaw is not a victim, however, because the presentence report took the position that Hinshaw was reimbursed prior to the detection of the fraudulent scheme. *See* Dkt. No. 8 (noting that, "[i]n the appendix to this Reply, as rebuttal evidence to the government's arguments, Movant attaches a certified copy of the agreed order of dismissal with prejudice in *Hinshaw v. Carroll, et al*, cause number D-1-GN-09-003057, 353rd District Court, Travis County, entered March 15, 2011.

-10-

Thus, there was no adjudication or finding in that case that Movant defrauded Hinshaw.").

But Hinshaw's settling a civil action against Carroll does not mean that Hinshaw is not a "victim" for purposes of Application Note 3(E)(i). For example, the United States Court of Appeals for the First Circuit, in a similar context, affirmed a district court's determination that a settlement in a civil case did not strip away victim status for detection purposes:

> Maisonet's contention that he was not on notice of any criminal investigation and that Pentagon did not seek to have criminal charges brought against him is irrelevant because what is determinative under the Guidelines is the time of detection of the offense by either the victim or the government. Pursuant to the clear language of the Guidelines, in order to be entitled to a deduction in the loss amount, Maisonet must have restituted the money before either Pentagon or the government detected the offense. That clearly did not happen here. The district court correctly found that Pentagon detected the offense and filed suit in state court in April 2006 seeking reimbursement of "the monies that had been fraudulently obtained." The court further found that "any restitution made was a result of the Settlement Agreement" reached by the parties on May 1, 2008, in the civil case. It then correctly concluded that Maisonet did not restitute any money before the offense was detected and, thus, was not entitled to any offset.

*United States v. Maisonet-Gonzalez*, 785 F.3d 757, 763 (1st Cir. 2015) (internal citations omitted); *see also United States v. Mitrow*, No. S3 13 Cr. 633(PAE), 2015 WL 5245281, at *9 (S.D.N.Y. Sept. 8, 2015) ("As the case law applying Application Note 3(e)(1) confirms, where a defendant admits a crime prompted by a fear of coming detection, there is no credit against loss." (collecting cases, including *United States v. Nichols*, 229 F.3d 975, 979 (10th Cir. 2000) ("It is not error for a district court to count the full amount taken through fraud as an intended loss, where the victim recovers the

loss through a civil suit, as opposed to through any voluntary action on the part of the defendant.")))

In sum, Carroll's guilty plea was entered voluntarily, and Carroll has not carried his burden to show he was prejudiced by the performance of his trial counsel.

**Recommendation**

The Court should deny Carroll's Section 2255 motion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 21, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE